IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**NATALIE H.**[1]

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

        Defendant.

Civ. No. 6:22-cv-00529-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Natalie H. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Full consent to magistrate jurisdiction was entered on May 31, 2022. (Dkt. #6). For the reasons provided below, the Commissioner's decision is REVERSED and REMANDED.

## BACKGROUND

Plaintiff is a 39-year-old who alleges she is unable to work due to mental and physical impairments. *See* tr. 116. Plaintiff filed an application for DIB and SSI on November 13, 2018. Tr. 117. In her application, Plaintiff claimed disability with an alleged onset date of September 9, 2018. Tr. 117. The claims were denied initially on June 4, 2019, and upon reconsideration on April 2, 2020. Tr. 16. A hearing was held on January 27, 2021, before Administrative Law Judge

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

B. Hobbs. Tr. 76-102. On April 16, 2021, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled from the alleged onset date, through the date of decision. Tr. 16-28. On February 8, 2022, the Appeals Council denied review, making the ALJ's decision the final agency decision. Tr. 1. This action followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, he is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

2 - Opinion and Order

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or he is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the

3 - Opinion and Order

Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

### THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since September 9, 2018, the alleged onset date. Tr. 18.

2. Plaintiff has the following severe impairments: fibromyalgia; inflammatory polyarthralgia; obesity; depression; anxiety; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)). Tr. 18.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Tr. 19.

4. Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb ramps and stairs, but only occasionally climb ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, or crawl. She can frequently handle and finger with the bilateral upper extremities. She can tolerate no exposure to extreme heat or cold as rated by the Dictionary of Occupational Titles. She can tolerate no exposure to hazards such as machinery and unprotected heights. Due to her mental impairments, she can understand, remember and carry out simple and routine instructions and tasks. She can have frequent interactive contact with co-workers or supervisors, but only occasional interactive contact with the public." Tr. 22.

5. Plaintiff is unable to perform any past relevant work. Tr. 26.

6. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy, such as sorter, electronics worker, and packager. Tr. 27.

7. Plaintiff has not been under a disability, as defined in the Social Security Act, since September 9, 2018, the alleged onset date. Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence ... is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

5 - Opinion and Order

# DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ properly discounted Plaintiff's subjective symptom testimony for clear and convincing reasons,
2. Whether the ALJ properly evaluated the medical opinions from Aroon Suansilppongse, MD; Winifred Ju, PhD; Mark Lee, LMFT; and Eric Leong, DO, and
3. Whether the ALJ properly discounted lay witness testimony for germane reasons.

For the following reasons, the Court finds that the ALJ erred in evaluating Plaintiff's subjective symptom testimony, the medical opinions regarding her mental health impairments, and lay witness testimony. The decision of the Commissioner is reversed and remanded for immediate payment of benefits.

**I.   The ALJ failed to provide clear and convincing reasons to discount plaintiff's subjective symptom testimony.**

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any

subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

### A. The ALJ improperly discounted plaintiff's symptom testimony, resulting in reversible error.

Plaintiff alleges that she is "in constant pain and the fatigue overwhelms [her]." Tr. 347. She testified that she has two to three bad days a week, when she struggles to even get out of bed. Tr. 95; see also tr. 347. She has a caregiver come for five hours a week to help with these bad days. Tr. 94. Mentally, Plaintiff struggles with anxiety, panic attacks, and PTSD symptoms, including flashbacks and nightmares. Tr. 95, 97, 353.

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 23. Specifically, the ALJ found that Plaintiff engaged in only conservative treatment, that her activities of daily living undermined her symptom testimony, and that "the medical record does not support the severity" of her symptoms. Tr. 23-25.

In discussing Plaintiff's fibromyalgia and inflammatory arthritis, the ALJ found that "[o]verall, the claimant's treatment has been very conservative, largely over-the-counter and prescription medicine." Tr. 25. And yet, previously in the opinion, the ALJ noted that Plaintiff "has tried multiple treatment modalities including physical therapy, chiropractic care, massage therapy, acupuncture, TENS therapy, Leflunomide, venlafaxine, methotrexate, anti-inflammatories, muscle relaxers, steroid injections, and steroids, as well as over-the-counter and

7 - Opinion and Order

prescription pain medication." Tr. 23. By the ALJ's own admission, Plaintiff has not undergone conservative treatment and this finding is not supported by substantial evidence.

The ALJ also found that Plaintiff's activities of daily living "indicate a higher level of function than alleged." Tr. 25. To support this finding, the ALJ cited to Plaintiff's function report that "indicated that [Plaintiff] could perform adequate self-care, prepare coffee and simple meals, do household chores and go out to the store." Tr. 25. But the ALJ failed to explain how these tasks either undermine Plaintiff's testimony or translate to full-time work. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted).

Plaintiff's function report is entirely consistent with the rest of her testimony. To accommodate for her pain and stiffness from fibromyalgia and inflammatory polyarthralgia, Plaintiff wears loose-fitting clothes without buttons, hooks, zippers, clasps, or laces. Tr. 349. She bathes seated every couple of days, when she is not in too much pain. Tr. 349. Her hair is cut short for easy maintenance. Tr. 349. When she is able – three to four times a week – Plaintiff prepares meals that take less than ten minutes to prepare. Tr. 349. Her husband prepares most meals, or she microwaves leftovers from her parents. Tr. 349. Plaintiff can go out alone 70% of the time, but on her bad days, 30% of the time, she needs someone to accompany her.[2] Tr. 350. These statements are consistent with Plaintiff's testimony that she has two to three bad days a week. Finally, it is unclear what household chores the ALJ is referring to. Plaintiff's function report states that her husband cares for the house, as she is "usually in too much pain, too fatigued, too stiff to do any housework." Tr. 350. Plaintiff's husband also cares for their two dogs; Plaintiff lets the dogs out during the day while her husband is at work. Tr. 348.

---

[2] Plaintiff's driver's license was suspended when she experienced multiple unexplained fainting episodes. *See* tr. 380, 1188. While the fainting seems to have resolved itself, it is unclear from the record if Plaintiff currently has a license or if she must still rely on family for transportation.

8 - Opinion and Order

The ALJ also cited to the fact that Plaintiff took college classes and "enjoyed exercising, as well as activities like hunting, fishing, camping, and being outdoors on her 25 acres with her goats, pigs, turkeys and dogs." Tr. 25. The record demonstrates that hiking and camping are hobbies that Plaintiff can no longer enjoy due to her limitations. Plaintiff stated "I *used to* love hiking and camping but I just don't have the stamina anymore." Tr. 351 (emphasis added). Plaintiff reported to medical providers that she "cannot exercise or move well." Tr. 1681. In October 2020, Plaintiff was going on regular walks with her husband, but could only walk about ten minutes before needing to stop to rest. Tr. 1681. Provider notes do indicate that in September 2019, Plaintiff was enrolled in two college classes and was hoping to go back to school. Tr. 1182. There is no other mention of Plaintiff taking classes after her alleged onset date. Even if Plaintiff successfully completed those two classes, the ALJ does not explain how the occasional college class undermines her symptom testimony or translates to transferable work skills. The ALJ's finding here is not supported by substantial evidence.

The ALJ also cited to the objective medical evidence in discounting Plaintiff's testimony, both regarding her physical and mental symptoms. Tr. 21. While conflicting record medical evidence is a permissible reason to discount symptom testimony, lack of corroborating record evidence is not. *See Smartt v. Kijakazi,* 53 F.4th 489, 498 (9th Cir. 2022).

Plaintiff's physical symptoms include fatigue, stiffness, tenderness, pain, and swelling in her knees and hands. As the ALJ noted, "physical examinations . . . revealed positive fibromyalgia tender points [and] tenderness to palpation with painful range of motion." Tr. 23; *see* tr. 564, 585, 590, 638, 842, 886, 1189, 1447, 1511, 1517, 1568, 1684, 1691, 1853. However, the ALJ relied heavily on exams that showed "no true synovitis, intact cranial nerve function, intact coordination, and an intact gait, with intact sensation, reflexes, and muscle tone." Tr. 23. In

9 - Opinion and Order

doing so, the ALJ erred by demanding positive objective medical evidence "fully corroborat[ing]" every allegation within the subjective testimony. *Smartt*, 53 F.4th at 498 (internal citations omitted). Further, this reliance ignores the objective medical evidence that supports Plaintiff's symptom testimony. Plaintiff's labs show elevated inflammatory markers. Tr. 637. Imaging shows disc bulges. Tr. 839. While Plaintiff does not experience constant swelling, her medical providers noted the large increase in swelling in the pictures she sent them. Tr. 1184, 1190. A physical therapy evaluation notes decreased lumbar range of motion, impaired spinal range of motion, decreased strength, and impaired and abnormal gait. Tr. 1512-13. The ALJ's finding here is not supported by substantial evidence.[3]

> As the ALJ noted, Plaintiff's mental health symptoms include:
>
> depression, anxiety, nervousness, panic, anhedonia, lack of motivation, fatigue, psychomotor agitation and retardation, flashbacks, hyperarousal, hypervigilance, increased startle response, muscle tension, low energy, panic attacks, shortness of breath, racing heart, racing thoughts, obsessive thoughts, excessive worry, cold sweats, fear, palpitations, stress, sleep disturbance, loos of appetite, compulsive behaviors, difficulty relaxing, feelings of overwhelm, a feeling of losing control, diminished interest in activities, low self-esteem, a history of trauma, intrusive memories, avoidant behavior, social withdrawal, fear of leaving home, irritability, easily annoyed, difficulty concentrating, memory problems, poor decision-making, feelings of worthlessness, hopelessness, anger, sleep disturbance, recurrent thoughts of death, and a history of suicide attempts, but no current suicidal or homicidal ideation.

Tr. 23-24. The ALJ then cited to Plaintiff's mental status exams where she presented as alert, pleasant and cooperative and displayed intact memory, cognition, attention, and concentration. Tr. 24. But the ALJ did not explain how this undermines Plaintiff's subjective symptom testimony. At these same appointments, Plaintiff appears anxious, makes poor eye contact, and is

---

[3] A Functional Capacity Evaluation from January 2021 further supports Plaintiff's symptom testimony. Tr. 36-57. The ALJ did not have the opportunity to review this evidence and the Appeals Council found it "does not show a reasonable probability that it would change the outcome of the decision." Tr. 2. Nevertheless, this Court "must consider [this new evidence] when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

10 - Opinion and Order

tearful. *See, e.g.,* tr. 543, 1113, 1190, 1198, 1253, 1255. Notes from Plaintiff's weekly therapy sessions show that Plaintiff cycled through bouts of decreased anxiety followed by increases in anxiety with flashbacks and other PTSD symptoms. *See* tr. 1629-1676. Plaintiff also struggles with suicidal ideation and self-harm. She has a history of suicide attempts and was hospitalized in May 2019 for suicidal ideation. Tr. 1492. She was self-harming in July and August 2019. Tr. 1025. Even when these urges were not as severe, Plaintiff still experienced intrusive thoughts of suicide and self-harm and engaged in passive suicidal ideation. Tr. 1253, 1489, 1502, 1781. The ALJ's finding here is also not supported by substantial evidence.

The ALJ did not provide clear and convincing reasons to discount plaintiff's testimony about her physical and mental health symptoms and limitations.

## II.   The ALJ erred in evaluating the medical opinions of Mark Lee, LMFT and Dr. Leong.

Plaintiff argues that the ALJ erred in evaluating the opinions of the state agency consulting doctors, as well as her treating providers. Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on March 2, 2018. Thus, the Commissioner's new regulations apply to the ALJ's assessment of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); *see also* 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

11 - Opinion and Order

prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability & consistency. *Id.* Secondary factors include the relationship with the claimant, specialization, and other factors. *Id.* at 404.1520c(c), 416.920c(c).

### A. Drs. Suansilppongse and Ju

Aroon Suansilppongse, MD initially reviewed Plaintiff's medical record and opined that Plaintiff had a moderate limitation in her ability to maintain attention and concentration. Tr. 128. Dr. Suansilppongse acknowledged that Plaintiff's symptoms "would occasionally interfere with her ability for sustained concentration, persistence or for task completion" but opined that she "would be able to complete tasks at an acceptable pace." Tr. 128. On reconsideration, Winifred Ju, Ph.D. affirmed this opinion. Tr. 161.

The ALJ found the state agency consultants' opinions not entirely persuasive, noting that "substantial new medical evidence . . . support[s] the greater restrictions in [Plaintiff's] residual functional capacity." Tr. 25. Nevertheless, Plaintiff argues that the ALJ erred by not incorporating any limitation in concentration, persistence, or pace. Substantial evidence supports the ALJ's finding here. Drs. Suansilppongse and Ju both opined that despite Plaintiff's mental health symptoms, she would still be able to complete tasks at a reasonable pace, so their opinions do not support any limitation in the RFC for persistence and pace.

//

//

### B. Mark Lee, LMFT

Plaintiff's weekly therapist, Mark Lee, LPC, submitted a letter on October 29, 2020. Tr. 1678. Mr. Lee explained Plaintiff's diagnoses and symptoms and opined that Plaintiff's symptoms would prevent her from working with the public. Tr. 1678. He also noted Plaintiff's difficulty with activities of daily living due to her anxiety. Mr. Lee noted that Plaintiff avoids activities and relieves traumatic events. Tr. 1678. Mr. Lee "[could not] speak to her abilities to work an 8-hour day 5 days per week without absences." Tr. 1678. Finally, Mr. Lee noted that Plaintiff was not currently abusing drugs or alcohol. Tr. 1678.

The ALJ found Mr. Lee's opinion not entirely persuasive. Tr. 26. Specifically, the ALJ found the opinion not consistent with Plaintiff's "reported activities of daily living including hunting, fishing, hiking, camping and being outdoors on her 25 acres with her goats, pigs, turkeys and dogs." Tr. 26. As addressed above, this finding is not supported by substantial evidence. Plaintiff "used to love hiking and camping" but no longer has the stamina to do these physical activities. Tr. 351; *see also* tr. 1005.

The ALJ also noted that "Mr. Lee failed to address the effects of [Plaintiff's] substance use on her ability to function." Tr. 26. To the extent that this was the ALJ's reason for finding the opinion unpersuasive, this is also not supported by substantial evidence. Plaintiff has struggled with addiction and has attended several inpatient and intensive outpatient treatment programs. *See, e.g.,* tr. 931, 1483, 1764. However, Mr. Lee's opinion was written when Plaintiff was not currently abusing drugs or alcohol and therefore did not need to address how her previous substance use affected her symptoms. The ALJ's finding here is not supported by substantial evidence.

### C. Dr. Leong

Eric Leong, DO, Plaintiff's medication management provider, submitted an opinion in January 2021. Tr. 1757-63. Dr. Leong noted Plaintiff's diagnoses of chronic PTSD, panic disorder, ADHD combined type, generalized anxiety disorder, cannabis dependence in remission, alcohol dependence in remission, and major depressive disorder. Tr. 1758. Dr. Leong also noted Plaintiff's "long history of panic attacks, multiple suicide attempts, psychiatric hospitalizations and past self-harm behaviors. She is easily triggered and overwhelmed. She copes with crying, avoidance and overeating. She used to use THC and alcohol to cope as well." Tr. 1758. Dr. Leong opined that Plaintiff would be unable to work full-time, even at a low stress job. Tr. 1758. He noted Plaintiff's tendency to panic and cry in stressful situations. Dr. Leong opined that Plaintiff had a marked limitation in her ability to follow complex instructions and make judgments accordingly. Tr. 1762. He also opined that Plaintiff had a marked limitation in her ability to interact with the public and respond appropriately. Tr. 1762. To support these opinions, Dr. Leong noted Plaintiff's low frustration and stress tolerance, as well as her history of multiple suicide attempts and hospitalizations. Tr. 1763. Dr. Leong also noted that Plaintiff's high anxiety and low self-esteem make it difficult for her to make rational decisions under pressure. Tr. 1763. Finally, Dr. Leong opined that Plaintiff would be absent four or more days a month. Tr. 1763.

The ALJ found Dr. Leong's opinion not entirely persuasive. Tr. 26. First, the ALJ found the opinion "not consistent with the evidence of record." Tr. 26. The ALJ did not elaborate as to which parts of Dr. Leong's opinion were inconsistent or which record evidence contradicted the opinion. This generalized, boilerplate finding is insufficient as it does not allow for meaningful

review. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *Laborin v. Berryhill*, 867 F.3d 1151, 1154-55 (9th Cir. 2017).

The ALJ then noted that many of Dr. Leong's limitations were based on Plaintiff's self-reports. However, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Psychiatric diagnosis and treatment "will always depend in part on the patient's self-report, as well as the clinician's observations of the patient." *Id.* Although Dr. Leong's opinion was based partly on Plaintiff's self-reports, it was also based on his observations and on Plaintiff's extensive psychiatric history that included multiple suicide attempts and hospitalizations. Tr. 1758. As discussed above, Plaintiff "appears anxious" and presents as tearful with poor eye contact. Tr. 543, 1113, 1190, 1198, 1253, 1255. The ALJ's finding here is not supported by substantial evidence.

Finally, the ALJ found inconsistent Dr. Leong's statement that "from her history," these limitations have been present for Plaintiff's whole life inconsistent. Tr. 26, 1763. Specifically, the ALJ referenced Plaintiff's work history or history of taking college classes. This finding is also not supported by substantial evidence. Plaintiff's mental health symptoms presented as early as 13. Tr. 1782. Since the age of 17, Plaintiff has experienced eleven psychiatric hospitalizations. Tr. 1781. A previous agency decision found Plaintiff disabled since July 1, 2010, primarily due to her mental health symptoms. Tr. 113. Plaintiff worked at SGA level from 2015-2018 but was unable to maintain consistent employment for more than three or four months during that time period. Tr. 86-89. Plaintiff testified "I was having crying spells and all sorts of issues." Tr. 88. She characterized one previous employer as "[giving her] too many chances." Tr. 88.

15 - Opinion and Order

Because the ALJ failed to identify any actual inconsistency between Dr. Leong's opinion and the record, the ALJ's finding here is not supported by substantial evidence.

### III. The ALJ failed to provide a germane reason for discounting lay witness testimony.

Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114). Further, the reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony can be harmless. *Molina*, 674 F.3d at 1121–22.

Plaintiff's husband completed a function report on February 4, 2019. Tr. 377-84. He noted that Plaintiff was exhausted and in pain "all the time." Tr. 377. Per the husband's report, Plaintiff is sometimes able to make meals, as long as they are easy and do not require much work. Tr. 379. Plaintiff's husband does most of the household chores and yardwork. Tr. 379. He also noted that Plaintiff does not handle stress or changes in routine well. Tr. 383. The ALJ found the lay witness statement "neither inherently valuable nor persuasive when compared to the objective medical evidence." Tr. 26. The ALJ failed to elaborate any further.

To the extent that the ALJ found the lay witness statement inconsistent with the record, that finding is not supported by substantial evidence. Inconsistency with the medical record is a

16 - Opinion and Order

germane reason to exclude a lay witness statement from consideration. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). However, the ALJ failed to identify any inconsistency and, for many of the reasons discussed above, Plaintiff's husband's statement is consistent with the record.

### IV.   Remedy

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).

In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that

17 - Opinion and Order

evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell*, 775 F.3d at 1141) (internal quotations omitted).

Here, the first prong is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony and for discrediting the medical opinions about her mental health.

As to the second prong, the Court finds remanding to further develop the record would serve little useful purpose. The Court notes that the ALJ found both Plaintiff's treating providers' opinions unpersuasive. *See Garrison*, 759 F.3d at 1021 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citation omitted).

As to the third prong, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. Dr. Leong opined that Plaintiff would be absent from work more than four days per month. Tr. 1763. The Vocational Expert testified that a person absent two or more days a month would not be able to maintain competitive employment. Tr. 100. Thus, in fully crediting the medical opinions as true, the ALJ would be required to find Plaintiff disabled on remand. *See Clester v. Comm'r of Soc. Sec.*, No. 09-cv-765-ST, 2010 WL 3463090, at *8 (D. Or. Aug. 3, 2010) (crediting doctor's opinion that the claimant "had marked limitations in her ability to ... maintain regular attendance, and be punctual within customary tolerances" combined with VE testimony that "individuals who miss two or more days on a chronic basis are not competitively employable" warranted remanding for an immediate calculation and award of benefits), *adopted*, 2010 WL 3463078 (D. Or. Aug. 31, 2010).

18 - Opinion and Order

**ORDER**

For the reasons discussed above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits.

It is so ORDERED and DATED this 29 day of August, 2023.

MARK D. CLARKE
United States Magistrate Judge